James Patrick, the elder, had three children, named Mary, James the younger, and David S.; and on 17 May, 1842, he executed three deeds of gift to them. By one he conveyed to his daughter Mary a slave called Louisa, and several articles of household furniture. By another he conveyed to his son James a negro called Clem, and sundry articles of furniture, and plantation utensils and stock. By the third he conveyed to his son David S. three negroes called Theny, Livey, and Demanda, and some furniture and other chattels. The three children were at the time infants, and lived with their father, and he kept the *Page 15 
negroes in his possession after he made the deeds of gift, and used them as he had done before, up to the time of his death, which happened in February, 1844. He died intestate, leaving his three children surviving him; and the defendant Currie took administration of his estate and took into his possession the slaves and other things so conveyed to his children by James Patrick. The daughter Mary intermarried the plaintiff Alfred W. Ellington. The son James died intestate after his father, and Alfred W. Ellington administered on his estate. And the defendant Currie was appointed the guardian of the son (22) David S., and has all the negroes in his possession.
The bill is filed by Ellington and his wife against Currie and David S. Patrick. It states that at the time James, the father, executed the deeds of gift he was very much in debt, and that he made the deeds, "and caused the same to be registered with a view to keep his creditors from selling the slaves," but that he never delivered either of them, or intended to make any difference between his children, and that neither of the deeds has been found among his papers, or elsewhere, since his death. It states further that "the defendant Currie is assured that his intestate did not intend to divide the negroes among the children by means of said deeds, and that he had no purpose but to keep them out of the reach of his creditors, and went no further towards vesting the title to the slaves in his children than to sign and seal such deeds and have them witnessed and registered"; and yet, that on behalf of his ward, David S., he insists on the validity of the deeds and their efficacy to pass the title of the slaves respectively to the several donees; and that he therefore claims, as belonging to the said David S., the three negroes conveyed to him, and one-half of the negro Clem, which was conveyed to the infant intestate, James. The bill, however, insists that the negroes really belonged to the father at his death, and (admitting that James, the son, owed no debts) that they ought to be divided equally between the surviving children; and alleging that there are no debts of the intestate remaining unpaid, and that the slaves, and one since born, are a clear surplus of the estate, the bill prays for such equal division and distribution.
The answers do not materially vary the facts from the statements of the bill; but they state that the deeds were executed and delivered, and insist that though fraudulent and void as against creditors, they were valid between the parties, and effectually passed the (23) title to the negroes.
The cause was set down for hearing on the bill and answers, and transferred to this Court. *Page 16 
The bill must be dismissed, for upon its face it cannot be sustained. It says, indeed, that the deeds were never delivered, and therefore that they never were complete. But the bill itself states facts which amount to delivery. It states that the father executed the deeds by signing and sealing, had them attested and caused them to be registered — which, of course, includes an acknowledgment of them, or a probate of them at his instance. That brings the case literally within Snider v. Lackenour,37 N.C. 360, as to the delivery. The subsequent loss or destruction of them did not affect their operation so as to vest the slaves again in the father, and enable Currie to take them as his administrator. Then, as to the other point, that the deeds were not intended to operate between the parties, but only to hinder creditor, it is only necessary to say that the act avoids such deeds only in favor of creditors, and makes them effectual as against the party and those claiming under him; and it is well settled that equity will not interfere with the operation of the statute at the instance of either party to a fraudulent conveyance. The plaintiffs are therefore entitled to the negro Louisa, and also the plaintiff, A. W. Ellington, as administrator, is entitled to the slave Clem, conveyed to his intestate; but they may be recovered at law, if Currie will not give them up; and there is no trust or other ground for a decree in respect to them in this Court.
PER CURIAM. Bill dismissed with costs.
Cited: Airey v. Holmes, 50 N.C. 144; Phillips v. Houston, id., 303;Myrover v. French, 73 N.C. 610; York v. Merritt, 80 N.C. 290; Bank v.Adrian, 116 N.C. 539,549; Helms v. Austin, ib., 754; Robbins v. Rascoe,120 N.C. 84; Perkins v. Thompson, 123 N.C. 179; Tarlton v. Griggs,131 N.C. 221; Pierce v. Stallings, 163 N.C. 107; Buchanan v. Clark,164 N.C. 63.
(24)